### HENRY GILLEN'S SONS LIGHTERAGE, Inc., v. FERNALD.

(Circuit Court of Appeals, Second Circuit. November 19, 1923.)

#### No. 61.

1. Seamen ⊝⇒9—"Seaworthiness" a relative term.

"Seaworthiness" is a relative term, and is ascertained ordinarily by the nature of the voyage, or the use for which the vessel is to be employed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaworthy—Seaworthiness.]

2. Seamen ⊝⇒29(2)—Owner cannot delegate duty as to seaworthiness to others.

Owner cannot delegate his duty towards a deckhand as regards seaworthiness of vessel to others.

3. Seamen ⊝⇒29(2)—Defect in false deck held to render vessel "unseaworthy."

Existence of a hole in sheathing on the deck of a lighter, which had been there for a long time, *held* to render the ship unseaworthy, so as to permit deckhand to recover for personal injuries; the sheathing or false deck having been placed over the permanent deck, to protect the deck while loading.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unseaworthy.]

4. Seamen ⊝⇒29(3)—Owner could not escape liability because member of crew failed to repair defect in deck.

Owner of lighter cannot escape liability for personal injuries to deckhand, because another member of the crew failed to repair a hole in a false deck, so obvious as to render the lighter plainly unfit for the contemplated work of loading.

⊝⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Southern District of New York.

Action by John E. Fernald against Henry Gillen's Sons Lighterage, Incorporated. Judgment for plaintiff, and defendant brings error. Affirmed.

Writ of error to a judgment of the District Court for the Southern District of New York for $3,032.35, entered after a jury verdict in favor of plaintiff below. The parties will be referred to as aligned below.

E. Clyde Sherwood, of New York City (William L. O'Brion, of New York City, of counsel), for plaintiff in error.

Austin & Abruzzo, of Brooklyn, N. Y. (George F. Hickey, of New York City, of counsel), for defendant in error.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. The action was to recover damages for personal injuries sustained by plaintiff, a deckhand, while employed on the lighter Henry Gillen, owned by defendant. The lighter was being loaded with copper bars, and, to accomplish this, a boom attached to a mast was used to hoist the drafts of copper bars from the dock to the lighter. In each draft, there were from 10 to 15 bars, weighing 175 to 200 pounds apiece. To protect the deck, a false deck or sheathing of boards had been placed over the permanent deck of the lighter, forward of the pilot house or cabin.

When the drafts of copper were loaded on the lighter, they would, at times, splinter the boards or partially break them. A supply of boards, and a saw, ax, hammer, and nails to repair broken boards, was kept on hand on the lighter, and it was the duty of the chief deckhand, Thompson, to make these repairs.

When the drafts were swung over the lighter, it was the duty of plaintiff and other deckhands to aid in landing them at the proper place. While plaintiff was walking backwards, aiding in guiding a draft, his foot caught in a hole in the planking of the false deck, and he fell down, and before he could extricate himself from this position the draft of copper bars struck him, breaking his leg. This hole was of substantial proportions, about a foot and a half long, and about five inches wide at one end, and tapering down to about an inch at the other.

Plaintiff testified that he saw the hole about a week before, and also an hour or so before, the accident. Miner, a deckhand, testified that he saw it the forepart of the week; i. e., some days before. Judge Goddard charged the jury carefully and comprehensively. He said:

"Plaintiff's contention is that this was an unseaworthy vessel. 'Seaworthy,' in this instance, means that this boat was reasonably fitted for trips about the harbor and for the business in which she was engaged.

"If you find that there was a hole in the deck of that lighter, as plaintiff claims, its existence there at that time constitutes an unseaworhy condition of the boat."

Exception was taken to the second paragraph, supra, and the sole question here argued is that this part of the charge was erroneous. It is contended that the existence of the hole in the sheathing on the

deck of the lighter did not render the ship unseaworthy, so as to permit the plaintiff to recover an indemnity.

The false deck was as much a part of the lighter as the permanent deck for the purposes of the work in hand. Where heavy loading, such as here done, is contemplated, it is the duty of the owner to see that the craft is reasonably equipped for that purpose. The point is that the work was of a kind where a splintered or more seriously damaged deck might reasonably be expected, and where the owner might reasonably foresee that there would be some impact in the course of the loading, which would cause holes or broken places.

[1] "Seaworthiness is a relative term" (Hanrahan v. Pacific Transport Co., Limited [C. C. A.] 262 Fed. 951), and is ascertained ordinarily by the nature of the voyage or the use for which the vessel is to be employed (Adams v. Bortz [C. C. A.] 279 Fed. 521).

[2] The owner cannot delegate his duty to others. The principle is thus stated by Judge Ward (who wrote in the Erickson Case, infra) in Storgard v. France & Canada S. S. Corp. (C. C. A.) 263 Fed. 545:

"The seamen were bound to use the equipment and appliances which the owners furnished, and they were on their part bound to furnish and maintain equipment and appliances for the seamen to use, at least free from defects known or which ought to be known. The common-law rules do not apply to this relation of master and seamen. It is intimate and peculiar, and differs from that between shore master and servants, who may at any time withdraw from service and refuse to use tools and appliances which they think dangerous. Employers' of seamen may not be insurers, but a much higher degree of care must be required of them than is required of employers of shore servants."

In John A. Roebling's Sons Co. of New York v. Erickson (C. C. A.) 261 Fed. 986, the ship was seaworthy, but the master used sticks for a purpose for which they were not intended nor fitted and hence the court said:

"There would, however, be little security for careful owners if, after furnishing a seaworthy ship and proper appliances, they were still liable for the act of the master in not using the proper appliances furnished, or in using them for purposes for which they were not furnished."

But the case at bar is not at all like the Erickson Case, supra, either in its facts or its principle.

[3, 4] Here the hole had existed for about a week. A different situation might have arisen, but this we need not now decide, if the injury to the false deck had occurred shortly before the accident. When plaintiff came aboard the lighter the day of the accident, it was the duty of the owner to see to it that the lighter was fit for the work intended, and, where such a defect has existed for a week or thereabouts, it cannot be said that a boat is thus fit. The owner cannot escape liability because another of his crew failed to repair with material at hand so obvious a defect which rendered the lighter plainly unfit for the contemplated work.

Indeed, in Patton-Tully Transp. Co. v. Turner (C. C. A.) 269 Fed. 334, which supports plaintiff's argument, the court went further than we are called upon to decide in this case.

Judgment affirmed.